AO 91 (Rev 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| DANIEL ENRIQUE RUIZ-LOPEZ | ) | Case No. 5:25-mj-00236 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

LODGED
CLERK, U.S. DISTRICT COURT
04/24/2025
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
4/24/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: D.C. DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **April 22, 2025** in the county of **Riverside** in the **Central** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. Section 1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jose Siqueiros, Border Patrol Agent – USBP
Printed name and title

Sworn to before me and signed in my presence.

Date: 04/24/2025

_____
Judge's signature

City and state: Riverside, CA

Hon. Shashi H. Kewalramani, Magistrate Judge
Printed name and title

AUSA: Peter Dahlquist

## AFFIDAVIT

I, Jose Siqueiros, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for DANIEL ENRIQUE RUIZ-LOPEZ ("RUIZ" or "defendant"), charging him with violating Title 8, United States Code, Section 1324(a)(1)(A)(ii), Transportation of Illegal Aliens.

2. This affidavit is also made pursuant to 18 U.S.C. § 3144 and in support of the government's motion for designation and detention of two material witnesses (identified below) in connection with a criminal complaint against defendant for a violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), Transportation of Illegal Aliens.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF BORDER PATROL AGENT JOSE SIQUEIROS

4. I am a Border Patrol Agent ("BPA") with the United States Border Patrol ("USBP"). I have been a BPA with Border

Patrol since June 2020. I am currently assigned to the Yuma Sector Prosecutions Unit.

### III. STATEMENT OF PROBABLE CAUSE

5. Based on my review of the investigative report in this matter and conversations with other law enforcement agents, I am aware of the following:

**A.  Traffic Stop and Initial Investigation**

6. On April 22, 2025, Border Patrol Agent ("BPA") Benjamin Correa was assigned to roving patrol duties and was observing vehicle traffic near the Agricultural Station on Interstate 10 ("I-10"). BPA Correa was operating fully marked Border Patrol Vehicles equipped with lights and sirens. BPA Correa was wearing rough-duty Border Patrol uniforms including identifying insignia and badge.

7. At approximately 9:30 p.m., BPA Correa noticed a red Jeep Cherokee (the "Jeep") travelling westbound. As the Jeep passed by, BPA Correa saw the driver of the Jeep brake abruptly, significantly reduce its speed, hold the steering tightly, and turn his head around toward the Border Patrol vehicle. BPA Correa merged onto the highway and caught up to the Jeep to observe the Jeep and the occupant's behavior. As BPA Correa approached the Jeep, BPA Correa saw the driver begin to slow the vehicle down to approximately 55 mph in a posted 65 mph zone. BPA Correa also saw the driver of the Jeep repeatedly swerving in his lane, thus forcing him to correct his vehicle multiple times. Based on these observations, BPA Corea continued to follow the vehicle.

8.   BPA Correa conducted record checks and learned that the Jeep was registered out of Oklahoma to an individual referred to herein as "S.C.P."  As BPA Correa drove behind the Jeep, BPA Correa noticed two back seat passengers, who BPA Correa had originally not seen at the time the Jeep drove in front of BPA Correa.  Due to the driver's behavior and characteristics noted for the vehicle, BPA Correa suspected the driver of the Jeep was transporting non-citizens.  BPA Correa activated his emergency lights and siren, and the driver yielded on Interstate 10, just west of the Mesa Drive exit near Blythe, California.

9.   BPA Correa approached the vehicle on the driver side and identified himself as a United States Border Patrol Agent.  BPA Correa began conducting an immigration inspection on all occupants of the vehicle.  As BPA Correa was conducting his immigration inspection, the driver, later identified as defendant, stated that he was waiting on a court date.  The two back-seat passengers, Sergio Emanuel Cortez-Penaloza ("Cortez"), and Teofila Solano-Pinzon ("Solano"), stated that they spoke Spanish.  BPA Correa continued his immigration inspection in the Spanish language.  Cortez and Solano stated that they are both citizens of Mexico and present in the United States illegally.

10.  BPA Correa asked Cortez and Solano when they last entered the United States from Mexico.  Cortez stated that he had entered on January 31, 2025.  Solano stated that she entered on November 28, 2023, near Douglas, Arizona.  BPA Correa then asked both passengers if they knew the driver and they both said

3

that they did. Both passengers stated that defendant picked them up in Oklahoma and were heading to Los Angeles, California. Cortez claimed that he was going to pay $300.00 United States Dollars (USD) for his arrangements once he reached Los Angeles, California. Solano stated that his cousin was going to pay for her arrangements and was also going to work to pay off her debt. Defendant claimed that he did know the back seat passengers and that he was going to take them from Oklahoma to Los Angeles, California to visit his family member. Defendant stated that he knew that Cortez and Solano are undocumented non-citizens. Based on the information gathered from the field interviews, all three persons were taken into custody and transported to the Blythe Border Patrol Station for further investigation and processing.

    **B.   Video-Recorded, Mirandized Interview of Defendant**

    11.  BPA Correa read defendant his Miranda Rights in Spanish, per form I-214, at approximately 12:59 a.m., as witnessed by BPA Melanie Cortes at the Blythe Station interview room. Defendant signed the form, indicating that he understood his rights. Defendant stated he was willing to answer questions.

    12.  At approximately 1:25 a.m., BPA Correa advised defendant as to his Lujan Castro Rights in Spanish. He signed the form confirming that he understood his rights. He did not identify any material witnesses in his case who could potentially testify in his favor.

13. Defendant said he picked up the female passenger (Solano) in Oklahoma. Defendant stated that after he picked up Solano, he drove about twelve hours to pick up the male passenger (Cortez). Defendant stated that he used his phones to facilitate picking up and transporting the smuggled aliens. Defendant stated that they were traveling in the Jeep and that he was the only driver. Defendant stated that they were traveling for three days and stopped once to rest. Defendant stated he was going to be paid $400.00 dollars per passenger, $800.00 total. Defendant further stated that he knew the people he was transporting were Mexican nationals and suspected that they were in the United States illegally. Defendant stated that he was transporting the passengers to Los Angeles, California. BPA Correa asked defendant how much money he had on him, and he said around $2,533.00 dollars. BPA Correa asked how defendant acquired the cash, and he claimed that his cousin from California sent him a $600.00 money order. BPA Correa asked defendant if he had any proof, such as receipts or a transaction log, to support this claim and defendant stated that he threw away the receipts. BPA Correa asked defendant why his password to his cell phone is "MS13" and he said that MS13 gang members attempted to recruit him when he was living in Honduras. Defendant stated that he bought his cell phones once he was in the United States.

### C. Video-Recorded, Mirandized Interview of Proposed Material Witness Solano

14. Solano stated that she crossed illegally into the United States from Mexico on March 4, 2024. Solano stated she was being transported from Virginia to Los Angeles, California. Solano stated that she was going to pay $1,500.00 USD for her arrangements once arriving in Los Angeles, California. Solano stated her partner is staying in Virginia and that her partner paid $14,000 USD to cross her from Mexico into the United States. Solano stated that from the beginning of her travel from Virginia to California, she witnessed six other subjects being transported by defendant in the Jeep throughout the United States. Solano stated that she witnessed the other subjects that were dropped off and paid defendant with cash.

### D. Video-Recorded, Mirandized Interview of Proposed Material Witness Cortez

15. Cortez stated that he crossed illegally into the United States from Mexico on January 31, 2025, near Agua Prieta, Sonora, Mexico. Cortez stated he was being transported from Utah to California. Cortez stated that he was going to pay $500 USD for his arrangements. He stated he was going to pay once he arrived in Manteca, California. Cortez stated that defendant picked him up, as well as Solano, in the Jeep.

//
//

## IV. CONCLUSION

16. For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), Transportation of Illegal Aliens.

_____
Jose Siqueiros, Border Patrol
Agent, United States Border
Patrol

Subscribed to and sworn before me this 24th day of April, 2025.

_____
HONORABLE SHASHI H. KEWALRAMANI
UNITED STATES MAGISTRATE JUDGE